

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00949-CV

**IN THE INTEREST OF J.C.R.**

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2017PA02916
Honorable Richard Garcia, Associate Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Patricia O. Alvarez, Justice (concurring in the judgment only)
Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: May 15, 2019

AFFIRMED

Appellant Diana H.[1] appeals the trial court's order terminating her parental rights to her nine-year-old son, J.C.R. Parental rights may be terminated only upon proof of clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Texas Family Code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)-(2). After a bench trial, Diana H.'s parental rights were terminated pursuant to subsections 161.001(b)(1)(E), (N), and (O). The trial court then appointed J.C.R.'s father as sole managing conservator and ordered that the Texas Department of Family and Protective Services was released from any further duties in this case.

---

[1] To protect the identity of the minor child, we refer to the parties by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

On appeal, Diana H. brings four issues: (1) the sufficiency of evidence to support the trial court's findings pursuant to subsections 161.001(b)(1)(E), (N), and (O); (2) the sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the best interest of her child; (3) the ineffectiveness of her counsel; and (4) the appointment of J.C.R.'s father as sole managing conservator. We affirm.

### SUFFICIENCY OF THE EVIDENCE

In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We give "appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review," by "assum[ing] that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that [we] should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* "This does not mean that [we] must disregard *all* evidence that does not support the finding." *Id.* (emphasis in original). "Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence." *Id.* "If, after conducting [our] legal sufficiency review of the record evidence, [we] determine[] that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then [we] must conclude that the evidence is legally insufficient." *Id.* at 344-45.

In reviewing the factually sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could

not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

  *A. Findings Pursuant to Section 161.001(b)(1)*

  The trial court found by clear and convincing evidence that Diana H. had (1) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child (subsection E grounds); (2) constructively abandoned the child (subsection N grounds); and (3) failed to comply with the provisions of the court-ordered family service plan (subsection O grounds). Only one of these three statutory grounds is necessary to support the trial court's order terminating Diana H.'s parental rights where there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In reviewing the record, we conclude for the reasons explained below that the evidence is legally and factually sufficient to support the trial court's finding pursuant to subsection E that Diana H. engaged in conduct that endangered the physical or emotional well-being of J.C.R.

  Under subsection E, the relevant inquiry is whether there is evidence that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Conduct" as used in this subsection includes both the parent's actions and failures to act. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied). Termination under this subsection must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *In re J.T.G.*, 121 S.W.3d at 125. The conduct need not occur in the child's presence and may occur both before and after the child has been removed by the Department. *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Scienter is not required for an appellant's own acts under subsection E; it is only a requirement when a parent places her child with others who engage

in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *See A.S. v. Tex. Dep't of Fam. & Protective Servs.*, 394 S.W.3d 703, 712 (Tex. App.—El Paso 2012, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.). Thus, evidence of illegal drug use by a parent and its effect on a parent's life and her ability to parent may establish an endangering course of conduct under subsection E. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (holding evidence sufficient to support finding of endangerment even though father had made significant recent improvements because "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices"); *In re K-A.B.M.*, 551 S.W.3d 275, 287 (Tex. App.—El Paso 2018, no pet.) ("A parent's use of drugs may qualify as an endangering course of conduct."); *Walker*, 312 S.W.3d at 617 ("Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E)."). Further, evidence that the parent continued to use illegal drugs even though the parent knew her parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature endangers a child's well-being. *In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied); *Cervantes-Peterson v. Tex. Dep't of Fam. & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The reporter's record of the bench trial in this appeal consists of only fifty-eight pages.[2] Three witnesses testified: Allison Deines, an investigator with the Department; Elaine Perez, a

---

[2] Although we recognize that the trial court and the parties in this proceeding had many hearings before the date of trial, we emphasize that none of the previous hearings constitute evidence that can support the trial court's order

caseworker with the Department; and Appellant Diana H. The investigator, Deines, testified that in December 2017, she went to Diana H.'s home to investigate a referral received by the Department asserting allegations of "neglectful supervision, medical neglect, and physical neglect" due to Diana H.'s use of "meth and pills." Eight-year-old J.C.R. appeared to Deines to be healthy and did not look malnourished. When Deines questioned Diana H. about her drug use, Diana H. admitted she had used "meth" the week before "because she had a tooth abscess." Deines also learned from J.C.R. that he had not been enrolled in school since he was seven years of age. Diana H. then confirmed J.C.R. had not been in school since January 2017, claiming the school had withdrawn J.C.R. because she had been unable to get her mother's (J.C.R.'s grandmother's) signature as head of the household. Deines testified she inquired with the school district but was only able to determine J.C.R. had been withdrawn for an unknown reason. J.C.R. was removed from the home and placed with his paternal grandmother.

Perez, the caseworker, testified that because Diana H. admitted to having used methamphetamine, the Department requested drug tests on a regular basis. Perez testified in the months leading up to trial, Diana H. tested positive for methamphetamines twice: once as a result from a urinalysis and once as a result from a hair follicle test. According to Perez, on November 15, 2018, which was only eleven days before trial, the hair follicle test was positive for methamphetamines. Perez explained the hair follicle test "can go back two to three months." Perez also testified that Diana H. was ordered to submit to a urinalysis after the previous hearing but did not appear for the test. Based on Diana H.'s previous positive results in the months before trial and

---

terminating a parent's rights. The only evidence that can support the trial court's order is that evidence admitted at trial. Given the constitutional rights of the parents in these proceedings, the future placement of the children involved, and the effect such placement will have on their lives, we urge the trial court and the parties to spend more time on the development of evidence at trial. The reporter's record reflects that the trial court in this case repeatedly hurried the lawyers through their examination of the witnesses. Given this entire record constitutes a mere 58 pages, the parties should have been allowed to thoroughly present their evidence and arguments at trial within a time frame appropriately commensurate to the finality of parental termination.

based on Diana H.'s refusal to take a drug test after the prior hearing, Perez believed Diana H. was still using methamphetamines. Thus, Perez testified that during the pendency of the case, Diana H. had not addressed the primary reason for her child being removed, had never expressed any accountability for finding herself in this situation, nor given any indication that she was committed to changing her lifestyle.[3] According to Perez, because Diana H. had not complied with urinalysis testing during the pendency of the case, she was not able to participate in visitations with J.C.R.

With regard to J.C.R. not having been enrolled in school for the twelve months prior to his removal, Perez testified that Diana H. claimed she was unable to enroll him because her mother had just passed away. Perez, however, pointed out that while the grandmother's death would have been "a reason for that moment," it would not explain why J.C.R. had not been in school for many months before his grandmother passed away.

When Diana H. testified, she claimed that the last time she had used methamphetamines was "probably at the beginning, when the case – when this happened, when this all started, that they took my little boy away from me." When questioned about the positive urinalysis and hair follicle tests, she argued both were unreliable. When asked why she had not submitted to a urinalysis, she testified that she understood the court ordered her to take a urinalysis, but said she did not take one because she "thought they were going to switch me here, for me to start coming

---

[3] We note that as part of her service plan, Diana H. was supposed to be referred to Outreach, Screening, Assessment, and Referral ("OSAR") services for drug assessment and then "attend and participate fully in the assessment" and "follow all recommendations." The record is unclear whether Diana H. was ever referred to OSAR. The caseworker, Perez, testified Diana H. was never sent to inpatient or outpatient treatment because the Department "did not have the OSAR assessment recommendations." When Perez was asked whether it was true she was supposed to send *another* referral, Perez admitted that after the October 17, 2018 hearing (one month before trial), she understood she "was supposed to send another referral," but she did "not show that [she] sent that." Perez testified she knew she sent "several" and "may have misplaced hers on that one." When asked whether it was true Diana H. complained she had not been able to get an appointment for the drug assessment, Perez testified, "No. I don't recall, no, sir." Diana H. testified she had attempted to schedule the assessment but was unable because OSAR did not have her referral. According to Diana H., she texted Perez who agreed to send a referral, but none was ever sent. While the caseworker admits she failed to send the second referral and Diana H. claims none was ever sent, the record does reflect that a breakdown in the system occurred.

here on a weekly basis." She emphasized that she had taken the hair follicle test. She admitted that using methamphetamines is a dangerous activity but denied that she was continuing to use methamphetamines. Although Diana H. admitted to having used methamphetamines a few days before J.C.R. was removed, she stressed that J.C.R. had not been with her—she had used at a laundromat. On cross-examination, she admitted that after using methamphetamines at the laundromat, she went home to J.C.R. but, in trying to excuse her use of methamphetamines, stressed she "did minimal."

With regard to J.C.R. not attending school, Diana H. testified her mother had "just barely passed away, in December, which was two weeks before CPS went knocking at [her] door." She testified that her mother had been very sick in the months before her death and could not go to school to sign a form as head of household. So, the school withdrew J.C.R.

In looking at all the evidence in the record in the light most favorable to the trial court's finding, we hold that the evidence is legally sufficient to support the trial court's finding of endangerment pursuant to subsection E. The evidence shows Diana H. used methamphetamines before the removal of J.C.R. and continued to use methamphetamines during the pendency of the case even though she knew her parental rights were in jeopardy. *See In re J.O.A.*, 283 S.W.3d at 346; *In re M.E.-M.N.*, 342 S.W.3d at 263; *Cervantes-Peterson*, 221 S.W.3d at 253-54. The evidence also shows that Diana H. permitted her child to remain out of school for a year, and the trial court could have found her excuses for his lack of education not credible. We hold the evidence shows Diana H. has engaged in a course of conduct that subjected her child to a life of uncertainty and instability, thus endangering the physical and emotional well-being of her child. *See A.S.*, 394 S.W.3d at 712; *In re M.R.J.M.*, 280 S.W.3d at 503; *In re K-A.B.M.*, 551 S.W.3d at 287; *Walker*, 312 S.W.3d at 617.

With regard to factual sufficiency, Diana H. argues that "no drug tests were introduced into evidence." However, the results of those tests were introduced in evidence through Perez's testimony, and no objection was made to her testifying about the results. In considering the entire record, including any disputed evidence, we conclude the evidence is factually sufficient to support the trial court's finding that Diana H. had endangered her child pursuant to subsection E.

### B. Best-Interest Finding Pursuant to Section 161.001(b)(2)

Diana H. also argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of J.C.R. Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, a court should consider the factors set out in section 263.307 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.307(b).[4] In addition to these statutory factors, in considering the best interest of the child, a court may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). The *Holley*

---

[4] These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE ANN. § 263.307(b).

factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). These include, but are not limited to, (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d at 249 n.9; *Holley*, 544 S.W.2d at 371-72. Additionally, in determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent's future conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

As noted, there was evidence that Diana H. has engaged in conduct that endangered the physical and emotional well-being of J.C.R. Diana H. used illegal drugs before J.C.R. was removed from her care and continued using illegal drugs even though she knew her parental rights were in jeopardy. Moreover, Diana H. has not had a substantial relationship with the child during the pendency of the case, attending only 11 of 34 eligible visits. She testified that she had transportation issues; however, in an attempt to accommodate her, the caseworker testified that the Department changed the location of the visits and changed the date of the visits several times to allow for her work schedule. According to the caseworker, Diana H. did not complete the drug urinalysis tests so that she could visit J.C.R. Perez testified Diana H. "has not shown she can leave the drugs alone during the course of this case." The caseworker also testified that Diana H. had not taken any responsibility for her conduct or stated she intended to make any necessary changes.

During her testimony, Diana H. minimized her admitted illegal drug use, explaining that using methamphetamines while around her son was not an issue because she had only used "minimal."

Further, at the time J.C.R. was removed from this mother's care, he had not attended school in almost a year and was behind his contemporaries as a result. After living at his grandmother's home for nine months, the caseworker testified that J.C.R. was flourishing, was doing well at school and progressing, and was receiving appropriate academic support. According to the caseworker, J.C.R. has stated he wishes to remain living at his grandmother's house. J.C.R. "has experienced lots of normalcy that he did not have before." J.C.R. "did not know what Easter eggs were or what a pinata was." The caseworker explained he has now learned to swim and is attending school. J.C.R. and his father both live with his paternal grandmother and plan to continue living there for the next year until his father can save enough money for them to move into their own home. There was also evidence that extended family live close to the paternal grandmother's home and J.C.R., as a result, has other family support.

Diana H. emphasizes testimony that J.C.R. had not seen his father in four years before his removal and believed, erroneously, that his father lived in Mexico. The caseworker recognized that J.C.R.'s father had not been in contact with J.C.R. before this case was filed. However, she explained that J.C.R.'s father had completed all the services he was asked to complete and now has a relationship with J.C.R. The caseworker explained that although J.C.R.'s father does work long hours in the evenings, he drives J.C.R. to school in the mornings, picks him up from school in the afternoons, spends time with him after school, and spends weekends with him. The caseworker also recognized that Diana H. had concerns J.C.R. father was "too harsh with him" and that J.C.R. "does not respond well to that." The caseworker testified that she discussed the matter with J.C.R.'s grandmother and father. She also talked to J.C.R. about what his mother said, and J.C.R. replied that he just wanted his father to be "a little bit more patien[t] with his

homework." The caseworker testified that she believed it was "an isolated incident with his homework." She explained J.C.R. was having trouble with his math and J.C.R.'s father was not capable of helping him. Thus, the caseworker testified they arranged for J.C.R. to receive tutoring at school. Diana H. also argues that J.C.R. is living with a grandmother who does not speak English, and he does not speak Spanish. The caseworker testified, however, that J.C.R. is now enrolled in a bilingual school.

In looking at all the evidence in favor of the trial court's finding, we conclude the evidence is legally sufficient to support the trial court's finding that termination of Diana H.'s parental rights is in J.C.R.'s best interest. *See In re J.O.A.*, 283 S.W.3d at 344.

With regard to factual sufficiency, Diana H. points to her own testimony that (1) J.C.R.'s father had been arrested for family violence; (2) J.C.R. had told her he was not happy living at his grandmother's home and was afraid of his father because of his temper; and (3) J.C.R.'s father was ordered to pay child support in the past, never paid any support, and spent three months in jail. Diana H., however, did not provide any other documentation to support her testimony about the father's criminal history or abusive conduct. As the factfinder, the trial court could have simply not found her testimony credible. Moreover, although it is undisputed that the father did not have contact with J.C.R. in the four years before the filing of this case,[5] the trial court, in looking at all the relevant factors, could still have concluded that termination of Diana H.'s parental rights was in J.C.R.'s best interest. Therefore, in considering the entire record, including any disputed evidence, we conclude the evidence is factually sufficient to support the trial court's finding that termination of Diana H.'s parental rights was in J.C.R.'s best interest. *See id.*

---

[5] The record is void of any information as to the reason J.C.R.'s father had no contact with him for over four years, and other than Diana H.'s testimony, the record does not reflect whether J.C.R.'s father had provided support for J.C.R. in any way during that time.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In her third issue, Diana H. claims she was denied effective assistance of counsel because her trial counsel did not object to the caseworker's testimony about the results of her drug tests. She argues that "[n]o competent attorney would have allowed testimony regarding drug use into evidence to be used to justify termination on subsection E grounds." The Texas Supreme Court has held that the statutory right to counsel in parental rights termination cases includes a guarantee that counsel will perform effectively. *In re B.G.*, 317 S.W.3d 250, 253–54 (Tex. 2010). Thus, the court adopted the *Strickland* test, which establishes the standard for effective assistance of counsel in criminal cases. *See In re M.S.*, 115 S.W.3d 534, 544–45 (Tex. 2003) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, to prove a claim of ineffective assistance of counsel, a defendant must prove, by a preponderance of the evidence, that (1) his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *In re M.S.*, 115 S.W.3d at 545 (citing *Strickland*, 466 U.S. at 687).

In reviewing an ineffectiveness claim, an appellate court affords "great deference to counsel's performance, indulging 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *Id*. (quoting *Strickland*, 466 U.S. at 689). Only when conduct is "'so outrageous that no competent attorney would have engaged in it'" will an appellate court determine the conduct amounted to ineffective assistance of counsel. *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

An appellant bears the burden of overcoming the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. When the record is silent concerning the reasons for trial counsel's actions, an appellate court does not engage in speculation to find ineffective assistance of counsel. *See Walker*,

312 S.W.3d at 623. Accordingly, ineffective assistance claims must be firmly found in the record, and the record must affirmatively show the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Here, Diana H. did not file a motion for new trial, and her trial counsel was not afforded an opportunity to respond to the allegation of ineffective assistance of counsel. Thus, no explanation as to any potential trial strategy has been given. Diana H. presents no argument other than to say no competent attorney would have failed to object to the caseworker's testimony about her drug test results. In considering the entire record, we disagree with Diana H. that her trial counsel could have no possible sound trial strategy in failing to object to the caseworker's testimony regarding her drug test results. *See In re L.C.W.*, 411 S.W.3d 116, 127 (Tex. App.—El Paso 2013, no pet.) (holding evidence not firmly founded in the record when appellant argued counsel, among nine other allegations, "failed to object to drug testimony"). We hold Diana H. has not met her burden of overcoming the presumption that trial counsel's conduct could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689.

Moreover, Diana H. has failed to show prejudice. Under *Strickland*'s second prong, she must show that her counsel's alleged deficient performance prejudiced her defense. *In re M.S.*, 115 S.W.3d at 545. "This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (quoting *Strickland*, 466 U.S. at 687). That is, Diana H. had the burden to show "there is a reasonable probability that, but for her counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 550 (citations omitted). Under the facts of this case, she needed to show that, but for her trial counsel's failure to object to the caseworker's testimony regarding her drug test results, the results of the proceedings would have been different. However, Diana H. has failed to show how the Department

was prohibiting from offering the drug test results through another witness. In other words, Diana H. has failed to show that her drug test results were wholly inadmissible in this proceeding.

We hold that Diana H. has failed to show she was denied effective assistance of counsel.

### APPOINTMENT OF FATHER AS SOLE MANAGING CONSERVATOR

In her final issue, Diana H. argues the trial court erred in appointing J.C.R.'s father as sole managing conservator. However, because we have determined the trial court did not err in terminating Diana H.'s parental rights, Diana H. no longer has any legal rights with respect to J.C.R. and cannot challenge the portion of the termination order that relates to the appointment of a conservator for J.C.R. *See In re E.O.R.*, No. 04-18-00248-CV, 2018 WL 5808293, at *5 (Tex. App.—San Antonio Nov. 7, 2018, no pet.); *In re L.T.P.* No. 04-17-00094-CV, 2017 WL 3430894, at *6 (Tex. App.—San Antonio 2017, pet. denied).

Moreover, even if Diana H. could challenge the trial court's appointment of J.C.R.'s father as sole managing conservator, the trial court did not err. The Texas Supreme Court has explained that different standards of review apply to termination decisions than conservatorship decisions. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Because of due process concerns in terminations, heightened standards apply to legal and factual sufficiency review of a termination decision. *See id*. "Conservatorship determinations, in contrast, are subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *Id*.

Section 153.131 of the Family Code provides that a parent shall be appointed sole managing conservator or both parents shall be appointed joint managing conservators "[u]nless the court finds that appointment of the parent . . . would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." TEX. FAM. CODE ANN. § 153.131(a). "It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the

child." *Id.* § 153.131(b). "A finding of a history of family violence involving the parents of a child removes the presumption under this subsection." *Id.*

As the sole remaining parent, J.C.R.'s father is entitled to appointment as sole managing conservator of J.C.R. in the absence of a finding that his appointment would not be in J.C.R.'s best interest because it would significantly impair J.C.R.'s physical health or emotional development. "[I]n an original proceeding for a conservatorship determination, even 'evidence that the nonparent would be a better custodian' is insufficient to support the appointment of a nonparent as managing conservator in preference to a parent." *In re M.T.C.*, 299 S.W.3d 474, 481 (Tex. App.—Texarkana 2009, no pet.) (quoting *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990)). "Rather, the nonparent is required to 'affirmatively prove by a preponderance of the evidence that appointment of the parent as managing conservator would *significantly impair* the child, either physically or emotionally.'" *Id.* (quoting *Lewelling*, 796 S.W.2d at 167) (emphasis in original).

Diana H.'s entire argument regarding J.C.R.'s father is as follows:

> The evidence showed that father had not seen the child in years and despite being ordered to pay child support years before failed to do so. Further, there was a history of domestic violence regarding the father. Thus, it was an abuse of discretion to name father sole managing conservator.

The only evidence of J.C.R.'s father committing domestic violence against Diana H. came from Diana H.'s own testimony and her statements to the caseworker. The trial court could have reasonably determined that Diana H.'s testimony was not credible. *See In re K.G.*, 350 S.W.3d 338, 353 (Tex. App.—Fort Worth 2011, pet. denied) (explaining it is "the factfinder's province" to "weigh witness credibility issues that depend on the appearance and demeanor of the witnesses"); *cf.* TEX. FAM. CODE ANN. § 153.004 (proving that in determining whether there is credible evidence of a history or pattern of past or present family violence by a parent, the court

shall consider whether a protective order was rendered against the parent during the two-year period preceding the filing of the suit or during the pendency of the suit).

Additionally, while the evidence was undisputed that J.C.R.'s father had not had a relationship with J.C.R. in the four years before the filing of this termination proceeding, there was other evidence that J.C.R.'s father has completed his service plan, J.C.R. and his father now have a relationship, and J.C.R. is flourishing while living with his father and grandmother. We therefore find no abuse of discretion by the trial court in appointing J.C.R.'s father sole managing conservator.

We affirm the trial court's order terminating Diana H.'s parental rights.

Liza A. Rodriguez, Justice